UNITED STATES of America,
Plaintiff–Appellee,

v.

David GOLLOTT, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Edmond S. "Tracy" MAXON,
Defendant–Appellant.

Nos. 89–6192, 89–6320.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1991.

Harry A. Loftus, Jr., Houston, Tex. (Court-appointed), for defendant-appellant Gollott.

Sean Connelly, Atty., U.S. Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., Paula Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Gordon E. White, Houston, Tex. (Court-appointed), for defendant-appellant Maxon.

Before KING and JONES, Circuit Judges.*

EDITH H. JONES, Circuit Judge:

Appellants Edmond S. "Tracy" Maxon and his right hand man David Gollott were convicted of several counts of failing to file currency transaction reports (CTR's) in connection with money-laundering transactions; causing other financial institutions to file CTR's containing material omissions and false statements of fact; and conspiring to defraud the United States. Maxon, convicted on two more counts than Gollott, was sentenced to 44 months' imprisonment, followed by supervised release. Gollott received a sentence of 28 months' imprisonment and supervised release. Although Maxon and Gollott question the applicability of the currency transaction reporting regulations to their conduct, the record leaves little doubt that appellants participated in just the sort of scheme the statute and regulations were intended to discourage. Finding no merit in these and other challenges to the convictions, we affirm.

In late 1987, IRS Special Agent Louis Carrillo, posing as a drug dealer who needed to launder large sums of cash, was introduced to Maxon as a former Houston constable who could accommodate Carrillo for a six percent (6%) fee. Maxon explained to Carrillo that he had done this type of thing before, that the cash would be "washed" through check cashing stores and then wired to California. While assuring Carrillo of his experience, Maxon also

---

* Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

fretted about the possibility of a government set-up. At a later meeting, Maxon introduced Carrillo to Gollott, who actively took part in the transactions.

On six occasions between November 1987 and March 1988, Maxon or Gollott personally laundered large amounts of cash, ranging from $34,000 to over $200,000 per transaction, through two intermediaries. In some instances, the cash was converted to money orders at Brothers Check Cashing, a company owned by two codefendants not parties to this appeal. On other occasions, cash was funnelled through a liquor store owned by yet another codefendant. The money orders or receipts generated by these transactions would then be taken to Houston banks and converted to wire transfer orders in the names of payees designated by Carrillo. Neither Maxon nor Gollott prepared or filed CTR's in connection with these transactions. These events formed the basis of Counts Two thru Seven of the indictment.[1]

In a related series of events leading to other counts of the indictment, Maxon and Gollott, along with their coconspirators, caused financial institutions to file false or misleading CTR's. The false CTR's filed by the bank identified either Maxon's limousine service, the check cashing business, or the liquor store as owner of the funds. None of the CTR's identified Carrillo as the person on whose behalf the transactions were completed.[2]

Maxon was paid a commission on each of these ventures, which he shared in some instances with the owners of the check cashing business or the liquor store. Gollott accompanied or assisted Maxon in most of these transactions.

## DISCUSSION

Among several complaints raised on appeal, Gollott and Maxon principally contend that the regulations they are convicted of violating are unconstitutionally vague and fail to give sufficient notice of illegal conduct. The governing statute, 31 U.S.C. § 5313(a), authorizes the Secretary of the Treasury to prescribe the types of monetary transactions for which a "domestic financial institution and any other participant" may be required to file a currency transaction report (CTR). The statute specifies in pertinent part:

A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

The Treasury Regulations applicable to appellants' dealings with Carrillo required CTR's as follows:

31 C.F.R. § 103.22(a)(1):

Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.00....

31 C.F.R. § 103.11(i):

*Financial institution.* Each agent, agency, branch, or office within the United States of any person doing business, whether or not on a regular basis or as an organized business concern, in one or more of the capacities listed below:

\* \* \* \* \* \*

(3) A currency dealer or exchanger, including a person engaged in the business of check casher....

Treasury Form 4789 implemented the regulations as the reporting form for currency transactions of $10,000 or more and instructed the financial institution to verify and record

---

1. In counts 2 through 9 of the indictment, appellants were charged with failing to file CTR's on eight separate occasions. Their criminal liability for Counts 8 and 9 was established under the *Pinkerton* theory of co-conspirator liability. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Maxon was convicted on every count and Gollott was convicted on all except count 2.

2. In counts 10 through 19, appellants were charged with causing other financial institutions to file CTR's containing material omissions and false statements of fact, in violation of 31 U.S.C. §§ 5313, 5322(b), 5324(2) and 31 C.F.R. §§ 103.22, 103.49. Maxon was convicted of all these charges, and Gollott was convicted on all but count 10.

(1) the name and address of the individual presenting the transaction and

(2) the identity, account number and tax payer identifying number of the individual or organization for whose account the transaction is being made.

Maxon and Gollott were each convicted of multiple counts involving (a) their failure, as a "financial institution" or its agents, to file CTR's on enumerated transactions; and (b) their causing other financial institutions, such as Brothers Check Cashing, to file false CTR's on those transactions.[3] Their attacks on the regulations apply to each set of convictions.

■ First, the appellants assert that they were not part of a "financial institution," notwithstanding that they explicitly received commissions for laundering cash sums in excess of $10,000 and for disguising the ownership of the funds. Maxon's brief rests on a superseded and arguably less comprehensive definition of financial institution in 31 C.F.R. § 103.11 than the amended one under which he was convicted.[4] Gollott relies on *United States v. Bucey*, 876 F.2d 1297, 1301–07 (7th Cir. 1989), which is inapposite both because it interpreted the superseded regulation and concededly espoused a minority position rejecting an individual's status as a financial institution. *See United States v. Hernando Ospina*, 798 F.2d 1570, 1578–79 (11th Cir.1986) (per curiam); *United States v. Goldberg*, 756 F.2d 949, 953–57 (2d Cir.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985). Both appellants

avoid, presumably because they cannot escape, the plain language of § 103.11(i)(3), applicable to their case: they were "[a] person doing business, whether or not on a regular basis or as an organized business concern, ... [as a] currency dealer or exchanger." This language is broader than and perhaps counterintuitive to everyday understanding of what a financial institution is, but it is not vague as applied to appellants' dealings.[5] We do not hold that § 103.22(a)(1) as amended necessarily requires every single participant in a covered transaction to file a CTR; we do hold that the regulation was implicated by Maxon's and Gollott's particular money laundering scheme and that the jury rationally found them to be a financial institution as defined.

■ In another species of vagueness claim, Gollott and, less forcefully, Maxon challenge their convictions for causing other financial institutions to file false CTR's. Allegedly, the then-effective Treasury Regulations did not clearly require them to specify that they were delivering Carrillo's cash, because it mandated identification of "any person or entity for whose or which account the transaction is to be effected." 31 C.F.R. § 103.27 (1988).[6] In *United States v. Murphy*, 809 F.2d 1427, 1430–31 (9th Cir.1987), the Ninth Circuit found this reference too ambiguous to support a criminal conviction, inasmuch as the court believed the instructions could have asked for the name of the "account holder" rather than the principal in the currency transaction. Read against the statutory directive that CTR's filed by an "agent or bailee" for

3. Count 1 charged both appellants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. On appeal, Maxon and Gollott do not specifically contest the conspiracy conviction. Because we affirm the convictions on the substantive counts, we need not discuss the conspiracy convictions further.

4. The prior definition of a financial institution included "[e]ach agency, branch, or office [of] ... a person who engages as a business in dealing in or exchanging currency as, for example, a dealer in foreign exchange or a person engaged primarily in the cashing of checks." 31 C.F.R. § 103.11(e)(3) (1986). The current regulation, promulgated April 8, 1987, *see* 52 Fed. Reg. 11,436, 11,441, clarifies both that individuals ("agents") *are* covered and that they are

covered whether or not the currency business is transacted on a "regular basis" or as an "organized business concern." 31 C.F.R. § 103.11(i)(3), *supra*.

5. The argument of unconstitutional vagueness of a statute ordinarily may not be raised by one whose conduct is clearly covered by the statute. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

6. This regulation now requires identification of "any person or entity on whose behalf such transaction is to be effected." 31 C.F.R. § 103.28 (1990). *See generally* 54 Fed.Reg. 3023, 3024 (1989) (explaining that the change was clarifying, not substantive).

another "identify the person for whom the transaction is being made," 31 U.S.C. § 5313(a), and the congressional purpose to thwart money laundering, *Murphy's* construction of the regulation seems untenable. But in any event, the perceived ambiguity in that case does not vitiate these appellants' convictions, for neither of them had "accounts" at Brothers Check Cashing or at the banks used to launder the money. Rather than make deposits, appellants either exchanged cash for money orders or wired the cash somewhere else. Appellants cannot assert that they arguably prepared the CTR forms correctly, for they either lied that the owner of the cash was an entity such as Maxon Limousine Service or left this part of Form 4789 blank.

■ Because appellants' challenges to the regulatory framework underlying their convictions are meritless, we move to Maxon's separate appellate points. Maxon asserts that the government did not prove his specific intent to violate the currency reporting statutes in the face of his evidence that he consulted an accountant and attorney regarding the CTR requirements. We are required to reject this factual insufficiency argument if, viewed in the light most favorable to the government, there is evidence from which a reasonable jury could have found that his failure to file CTR's and his conspiratorial activity against the United States were willful. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We need not recite the entire record to demonstrate the weakness of this argument. Maxon's purported consultations with his accountant and attorney were generalized and evasive concerning the illegal origin of the funds, and they occurred after Maxon had conducted several of the exchanges. The jury was entitled to reject such purported evidence of good faith, particularly in light of Maxon's own statements to Carrillo indicating that he was experienced at money laundering, was fearful whether Carrillo might be a government agent, and knew the importance of creating a reasonable doubt in a jury's mind about his intentions. The jury was fully entitled to disbelieve Maxon's calculated, contrived expressions of good faith.

■ Maxon next asserts that a violation of his motion *in limine* required a mistrial, which was erroneously denied by the trial court. The violation occurred during defense cross-examination of the IRS special agent who executed a search warrant on Maxon's residence. The motion *in limine* sought exclusion of testimony concerning any "illegal items" seized during the execution of the warrant. Despite warnings by the prosecution and the court that his questioning was moving into the area covered by the motion *in limine*, defense counsel inquired whether the agent's search had turned up items covered by the warrant. The agent stated that along with other covered items, a small residue of cocaine was found. According to Maxon, the extraneous drug evidence so prejudiced the jury as to require a new trial. We disagree. A conviction may be reversed for the denial of a mistrial only if the court abused its discretion. *United States v. Merida*, 765 F.2d 1205, 1220 (5th Cir.1985). The defendant must show that in the context of the whole trial the improperly admitted evidence was so prejudicial that it had a substantial impact on the verdict. *Id.* Maxon does not contest other damaging testimony that he was considering becoming involved in dealings in drugs himself. He was described by a co-conspirator as a "crook [and] gangster" who was "involved in drugs." Maxon's tape-recorded statements abundantly document his explicit criminal intent. Further, the trial court instructed the jury that the defendants were not charged with using narcotics and that the jury should not consider such extrinsic matters except as they related to questions of intent or motive. Thus, if the agent's testimony was erroneously admitted, its impact did not taint the verdict.

■ Although Maxon did not raise this error in the trial court, he now asserts that a comment by the trial court improperly suggested that Maxon's regulatory defense had no merit. We review unobjected-to errors only for mistakes so fundamental as to constitute a miscarriage of justice, *United States v. Brunson*, 915 F.2d 942, 944 (5th Cir.1990), and we find none here. Maxon's attorney asked IRS Agent Kar-

nick whether, in Karnick's opinion, Maxon was a "dealer in foreign exchange or person engaged primarily in the cashing of checks." The government objected, asserting that this question mischaracterized the definition of "financial institution." Overruling the objection, the district court told the prosecutor he could correct any mischaracterization on re-direct and added, "I'm going to instruct the jury on all this.... I'm going to tell the jury what the law is and whether or not it applies to Mr. Maxon. If it doesn't apply to Mr. Maxon then we're wasting an awful lot of time." Maxon's proffered interpretation of the last comment as an improper remark on the validity of the defense is dubious. It seems much more likely that the trial court was assuring the prosecutor that the jury would be properly instructed, so he need not worry about how counsel for Maxon attempted to characterize the law. This interpretation is fortified because the district court *overruled* the government's objection. Alternatively, any misimpression the jury might have had was cured by the trial court's instruction that it had no opinion on the merits of the case. The remark was not seriously prejudicial.

For these reasons, the convictions of Maxon and Gollott are AFFIRMED.